SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, Plaintiff–Appellant,

v.

PACIFICORP, (including Utah Power and Light Company, a Division), Defendant–Appellee,

and

State of Idaho, Defendant-intervenor-Appellee.

No. 99–35204.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 2000

Opinion Filed Oct. 3, 2000

Withdrawn Jan. 29, 2001

Amended Opinion Filed Jan. 29, 2001

Charles F. Wheatley, Jr., Wheatley & Ranquist, Annapolis, Maryland, Peter J. Richardson, Richardson & O'Leary, Eagle, Idaho, for the plaintiff-appellant.

David J. Jordan and John M. Eriksson, Stoel Rives, Salt Lake City, Utah, for the defendants-appellees.

Brett T. DeLange, Deputy Attorney General, Civil Litigation Division, Boise, Idaho, for the defendant-intervenor-appellee.

Before: LAY,[1] TASHIMA and McKEOWN, Circuit Judges.

## ORDER

The opinion filed on October 3, 2000, and reported as *Snake River Valley Elec. Assoc. v. PacifiCorp*, 228 F.3d 972 (9th Cir. 2000), is withdrawn and the Amended Opinion filed concurrently with this order is substituted in its place.

With the filing of the amended opinion, the panel has voted to deny the petitions for panel rehearing. Judges Tashima and McKeown have voted to deny the petitions for rehearing en banc and Judge Lay so recommends. The full court has been advised of the petitions for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. Fed. R.App. P. 35(b).

The petitions for panel rehearing and the petitions for rehearing en banc are denied.

## OPINION

LAY, Circuit Judge:

■ Snake River Valley Electric Association ("SRVEA") brought this action against PacifiCorp and its division, Utah Power and Light Company,[2] alleging a violation of the federal antitrust laws. SRVEA challenges PacifiCorp's refusal to allow SRVEA to "wheel"[3] and supply power to PacifiCorp's customers through PacifiCorp's electric transmission facilities, arguing such refusal violates § 1 and § 2 of the Sherman Antitrust Act, 15 U.S.C. § 1-2 (1997), and § 3 of the Clayton Act, 15 U.S.C. § 14 (1997).[4] In moving for summary judgment, PacifiCorp argues that Idaho law expressly permits such anticom-

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. PacifiCorp and Utah Power and Light Company shall be jointly referred to as "PacifiCorp."

3. "Wheeling" refers to a common industry practice where utility A delivers electricity to utility A's customers through utility B's transmission facilities.

4. Originally, SRVEA included in its complaint an allegation that PacifiCorp violated antitrust laws by refusing to sell SRVEA electricity wholesale. SRVEA asserts that only the Federal Energy Regulatory Commission has jurisdiction over wholesale interstate sales of electricity, thus PacifiCorp is not shielded by the Electric Supplier Stabilization Act. Since that point, however, SRVEA has entered into a contract with another supplier, Enron, for the wholesale purchase of electricity. Although Enron has the right to cancel its contract with SRVEA, PacifiCorp stipulated to the district court that it would provide wholesale electricity to SRVEA if Enron cancelled its contract and PacifiCorp is found to violate the antitrust statutes in the present case. Thus, any claim relating to PacifiCorp's refusal to sell electricity to SRVEA appears to be moot. *See United States Parole Commn. v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Since we remand this case to the district court, we need not resolve these issues.

petitive conduct, thereby immunizing PacifiCorp from antitrust liability under the state action immunity doctrine. *See Parker v. Brown,* 317 U.S. 341, 350–51, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The district court granted summary judgment to PacifiCorp, agreeing that the Electric Supplier Stabilization Act ("ESSA"), Idaho Code § 61–332 *et seq.* (1999), expressly authorizes PacifiCorp's refusal, and, as such, the state action immunity doctrine bars SRVEA from recovering under the federal antitrust statutes. We reverse.[5]

## I. Background

The Idaho Legislature passed the ESSA in 1970 to regulate electric service providers. *See* Idaho Code § 61–332 *et seq.* (1999). The acknowledged purpose of this statute was to "promote harmony among and between electric suppliers furnishing electricity within the state of Idaho, prohibit the 'pirating' of customers of another supplier, discourage duplication of electric facilities, and stabilize the territories and customers served with electricity by such suppliers." Idaho Code § 61–332 Subsection B (1999). To fulfill these goals, the ESSA restricted competition for existing utility customers.[6]

SRVEA is a non-profit cooperative organized to buy electric power at wholesale rates for its members. SRVEA's members reside in eastern Idaho, and most of them presently purchase their power from Utah Power and Light Company, a subsidiary of PacifiCorp. PacifiCorp owns the vast majority of nearby electric transmission facilities and controls over ninety percent of the market for electricity in the Idaho Falls area.

SRVEA seeks to provide electricity to its members at a lower cost. As SRVEA owns no electric transmission facilities, it sought access to PacifiCorp's facilities to wheel power to its members as well as PacifiCorp's permission to serve PacifiCorp customers. PacifiCorp refused to grant consent, however, believing the ESSA authorized such refusal. As a result, SRVEA brought this antitrust action in the Idaho federal district court.

## II. Discussion

■ SRVEA first argues that PacifiCorp's anticompetitive actions are not authorized by the ESSA, as ESSA does not authorize PacifiCorp's refusal to wheel SRVEA's power. This may be true, but SRVEA not only asks PacifiCorp to *wheel* power, but also seeks PacifiCorp's consent to *provide* power to PacifiCorp's customers. This conduct is covered by the ESSA, which forbids a utility from "supply[ing] ... electric service to any electric service entrance that is then ... connected for electric service to facilities of another electric supplier" absent the consent of such other supplier. Idaho Code § 61–332B (1999).[7] As the ESSA authorizes

5. SRVEA also alleged that PacifiCorp violated several provisions of state law and violated federal antitrust laws with respect to four Idaho customers who are not presently served by PacifiCorp. · SRVEA waived these claims (without conditions) after the district court granted summary judgment. After reviewing the parties' briefs, we are satisfied the district court's order is a final order. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir.1984) (holding that voluntary dismissal of causes of action not covered by summary judgment order creates an appealable final order).

6. The relevant section of the ESSA prohibits an electric supplier from offering to serve an existing customer of another utility unless that utility consents:

> No electric supplier shall construct or extend facilities, nor make any electric connections, nor permit any connections to be made to any of its facilities for the purpose of supplying electric service nor shall it supply or furnish electric service to any electric service entrance that is then or had at any time previously been connected ... to facilities of another electric supplier, without the written consent of such other electric supplier.
>
> Idaho Code § 61–332B (1999).

7. The ESSA defines "electric service" as "electricity furnished to an ultimate consumer by a supplier," Idaho Code § 61–332(A)(5) (1999). "Service entrance" is defined as "the entrance of electric service from facilities of the supplier to the service equipment or uti-

PacifiCorp's behavior, the question becomes whether the ESSA cloaks PacifiCorp's refusal with state action immunity.

The Supreme Court first announced the state action immunity doctrine in *Parker*, where the Court held that principles of federalism immunize anticompetitive conduct pursuant to state laws restricting competition from federal antitrust scrutiny. "In a dual system of government . . . an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Parker*, 317 U.S. at 351, 63 S.Ct. 307. The Court found no such Congressional intent in the antitrust statutes. *Id.* At the same time, the Supreme Court has made clear that a state may not thwart "the national policy in favor of competition . . . by casting . . . a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement." *California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 106, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (*Midcal*). The state action immunity test thus ensures that a state "imposed the [competitive] restraint as an act of government" rather than merely "authorizing [a party] to violate [antitrust laws], or . . . declaring that their action is lawful."[8] *Parker*, 317 U.S. at 351–52, 63 S.Ct. 307.

In *Midcal*, the Court created the contemporary two-step test for determining whether an alleged state-sponsored restraint of competition is immune from federal antitrust scrutiny. The *Midcal* Court held that the challenged restraint must be (1) clearly articulated, and (2) actively supervised by the state. 445 U.S. at 105, 100 S.Ct. 937. As applied to the present case, the district court held (1) through the enactment of ESSA, the State of Idaho has affirmatively expressed a state policy re-

straining competition among electrical suppliers, and (2) the ESSA satisfies the requirement that the State of Idaho actively supervise its anticompetitive policy.

*A. Clearly Articulated State Policy*

The first prong of the *Midcal* test is satisfied when the state manifests an intent to exclude an industry from federal antitrust scrutiny. SRVEA urges that such intent is missing because the ESSA does not mandate or compel the prohibition of competition. However, the Supreme Court has held that this prong is satisfied when a state's policy *permits* but does not *compel* anticompetitive conduct. *See Southern Motor Carriers Rate Conference v. United States*, 471 U.S. 48, 60, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985) ("[T]he federal antitrust laws do not forbid the States to adopt policies that permit, but do not compel, anticompetitive conduct by *regulated* private parties."). In *A–1 Ambulance Serv. Inc. v. County of Monterey*, 90 F.3d 333 (9th Cir.1996), this circuit noted the modern test for clear articulation: "[t]o meet the 'clearly articulated' requirement it is not necessary for the State to expressly permit the displacement of competition. Instead, it is only required that 'suppression of competition is the foreseeable result of' what the statute authorizes.'" *Id.* at 336 (quoting *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372–73, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991)). We must, therefore, determine whether PacifiCorp's refusal to allow SRVEA to service PacifiCorp customers is a foreseeable result of the ESSA.

There is no question that Idaho Code § 61–332B contemplates the suppression of competition at issue. The code

lization equipment of the consumer." *Id.* at (A)(7).

**8.** The Court has not clearly defined the relationship between federal antitrust preemption of state laws restricting competition and the state action immunity doctrine. *See generally* 1 Philip Areeda & Herbert Hovenkamp, Anti-

trust Law ¶ 217 (1997). Nevertheless, the Court has made clear that an otherwise per se antitrust violation will be upheld as long as it satisfies the state action immunity test. *See* *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 343–344, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987) (holding per se antitrust violation could be saved by state action immunity).

section forbids "furnish[ing] electric service" to the "electric service entrance" of another electric supplier's customer without "the written consent of such other electric supplier." Idaho Code § 61–332B (1999). The legislature would not grant such power to an electric supplier without foreseeing that such supplier would normally refuse consent. The restraint of trade at issue—PacifiCorp's refusal to allow SRVEA to supply PacifiCorp customers with electricity—is clearly a foreseeable result of the Idaho Code.

■ SRVEA's arguments to the contrary are without merit. SRVEA relies on the earlier case of *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), and urges that anticompetitive conduct must be compelled by the state, rather than merely permitted. In *Southern Motor*, however, the Supreme Court expressly repudiated the notion that *Goldfarb* demanded a state expressly authorize an anticompetitive act, stating "[t]he federal antitrust laws do not forbid the States to adopt policies that permit, but do not compel, anticompetitive conduct by *regulated* private parties. As long as the State clearly articulates its intent to adopt a permissive policy, the first prong of the *Midcal* test is satisfied."[9] SRVEA also argues that nothing in the ESSA expressly prohibits PacifiCorp from wheeling

power to SRVEA customers. As mentioned above, this may be true, but it is irrelevant. PacifiCorp's refusal to grant SRVEA consent to *serve* PacifiCorp customers is a foreseeable result of the ESSA. Finally, SRVEA urges that for a foreseeable result to satisfy the clear articulation prong, it must be based on a system of state regulation. This argument fails as it conflates the two prongs of the *Midcal* test.

■ For these reasons, we hold that the district court correctly concluded that ESSA clearly expresses a policy to displace competition among electrical suppliers so that the first prong of *Midcal* is satisfied.

### B. Active State Supervision [10]

The second prong of the *Midcal* test requires that the state "exercise ultimate control over the challenged [private] anticompetitive conduct." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 634, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992) (quotations omitted). This prong ensures that "the state-action doctrine will shelter only the particular anticompetitive acts of private parties that, in the judgment of the State, actually further state regulatory policies." *Patrick v. Burget*, 486 U.S. 94, 101, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988). In the absence of

---

**9.** As Professors Areeda and Hovenkamp have also noted, the Court's decision in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 45–46, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), made clear that an actor's conduct need not be compelled in order to be protected under *Parker:*

> None of our cases involving the application of the state action exemption to a municipality has required that compulsion be shown. [Past cases] spoke in terms of the State's direction *or authorization* of the anticompetitive practice at issue. This is so because … compulsion is simply unnecessary as an evidentiary matter to prove that the challenged practice constitutes state action. In short, although compulsion affirmatively expressed may be the best evidence of state policy, it is by no means a prerequisite to a finding that a municipality acted pursuant to clearly articulated state policy.

1 Areeda & Hovenkamp, *supra*, ¶ 224 (quoting *Town of Hallie*, 471 U.S. at 45–46, 105 S.Ct. 1713).

**10.** In its petition for rehearing, Idaho argues that Idaho Code § 61–328 limits a utility's authority to sell a service area absent approval from the Idaho Public Utilities Commission. As Idaho did not raise this statute on appeal, this argument is waived. Even if we were to reach this argument, Snake River points out that the Idaho Statute specifically denies the Idaho Public Utilities Commission jurisdiction over "cooperatives or municipalities." Idaho Code § 61–334(1). Further, as § 61–328 provides the Idaho Public Utilities Commission jurisdiction over a decision to sell an exclusive service territory, it does not reach the present situation, where a utility has refused to sell an exclusive service territory.

such review, "there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests." *Id.*

PacifiCorp urges (1) that the statute is written such that no state regulation or supervision is necessary, and, alternatively (2) there is sufficient state oversight to satisfy this prong of *Midcal.* The district court agreed with PacifiCorp, and held that the statute was "self-policing" such that the second prong of *Midcal* was satisfied and there was sufficient actual state oversight to satisfy *Midcal.*

As to PacifiCorp's first argument, it is true that the Supreme Court has suggested in dicta that a state statute might be written such that a state need not actually review individual price-setting decisions. *See 324 Liquor Corp. v. Duffy,* 479 U.S. 335, 344 n. 6, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987) (suggesting that a statute that specifies the price margin between wholesale and retail prices may amount to active supervision, despite the lack of actual state supervision over the individual price-setting decisions); *see also Ticor,* 504 U.S. at 640, 112 S.Ct. 2169 (citing *Duffy* dicta with approval). The logic behind this "exception" to the active supervision requirement is that some state statutes may be so comprehensive, or their application so mechanical, that actual state review would be pointless. There is no reason, for example, to require state supervision of law that prescribes the percentage over wholesale that an alcohol retailer can charge. The amount is a simple calculation that the retailer has no discretion to alter.

The present situation, however, is significantly different. Under the ESSA, PacifiCorp has the power to grant written consent for another utility to serve its customers. *See* Idaho Code § 332B. PacifiCorp can, consistent with ESSA, avoid competition for its customers simply by declining to consent—an act undertaken without review by any state agency. By providing an option for competition, and then an "opt out" that is wholly within the

utility's control and without state supervision, the state has, in effect, given the utility partial control over the no competition policy. This is the type of private regulatory power that the active supervision prong of *Midcal* is supposed to prevent. *See Ticor,* 504 U.S. at 634–35, 112 S.Ct. 2169 (holding the purpose of the state action immunity doctrine "is to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention, not simply by agreement among private parties"). We do not believe, therefore, that the ESSA is sufficiently self-policing to satisfy the second prong of *Midcal.*

PacifiCorp believes that the Eleventh Circuit, in *Municipal Utilities Bd. v. Alabama Power Co.,* 934 F.2d 1493 (11th Cir. 1991), faced the same issue as in the present case, and found that *Midcal* was satisfied despite the lack of active state supervision. *Alabama Power,* however, is distinguishable. The *Alabama Power* court faced a challenge to an Alabama statutory scheme that was similar to Idaho's challenged scheme: the Alabama statute limited utilities' competition for customers by granting exclusive service areas. *See id.* at 1503. While the court held that the general provisions of the Act satisfied *Midcal* without any actual state supervision, *see id.* at 1504, the court remanded the active supervision issue to the district court because the Alabama Acts included a series of private agreements dividing service territories. Since the terms of these agreements were not in the Act, nor a part of the record of the case, the court was unable to determine whether the private agreements met the active supervision requirement. *Id.* On remand, the Eleventh Circuit agreed with the district court that the private agreements at issue in the case were actually approved by the Alabama Legislature, and further, under the provisions of the Act in question, the Alabama Legislature had to give explicit approval to any

territorial exchanges private utilities agreed to. *See Municipal Utilities Bd. v. Alabama Power Co.*, 21 F.3d 384, 387 (11th Cir.1994) ("Under the 1985 Act, therefore, the Alabama Legislature must explicitly approve any customer allocations the parties might wish to make.") The existence of legislative review of private agreements to exchange customers distinguishes the *Alabama Power* cases from the present case. It should be clear that Idaho's situation, like Alabama, could be addressed by legislative action providing for supervision.

Nor does the state actually exercise sufficient control to satisfy the active supervision requirement. PacifiCorp and Idaho cite four Idaho cases applying and enforcing the ESSA,[11] and argue that this amounts to active supervision under this circuit's decision in *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.* 981 F.2d 429 (9th Cir.1992). While *Nugget* does hold that an equivalent number of cases act as active supervision, *see id* at 435, those cases all involved reviews of the specific conduct at issue in *Nugget.* Idaho courts, in contrast, have no authority under the ESSA to review or strike down private divisions of customers. *See* Idaho Code § 61–333C ("Any contract validly entered pursuant to this section shall be binding and shall be legally enforceable pursuant to this act. . . ."). The mere presence of cases reviewing general violations of the ESSA does not amount to active supervision in this case when Idaho courts lack all power to review the specific conduct at issue.

For these reasons, we believe that the active supervision requirement from *Midcal* is not met.

### III. Conclusion

It is clear the statute is not self-policing, but in addition we fail to find any state recognition as to any state supervision whatsoever. Section 61–332B allows the electric supplier to define its service territory solely by consent without any reference to any statute or regulation. The statute simply allows private parties to decide under what circumstances competition will be allowed. There exists no reference to state regulation. As the Supreme Court has observed:

> Our decisions make clear that the purpose of the active supervision inquiry is not to determine whether the State has met some normative standard, such as efficiency, in its regulatory practices. Its purpose is to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention, not simply by agreement among private parties.

*Ticor*, 504 U.S. at 634–635, 112 S.Ct. 2169.

Because the ESSA does not provide for active supervision of private agreements to divide customers, we do not believe that the second prong of *Midcal* is satisfied. PacifiCorp's refusal to allow SRVEA to serve its customers is, therefore, not shielded by the state action immunity doctrine. The district court's grant of summary judgment is REVERSED and the case is REMANDED for further proceedings.

---

11. *See Kootenai Elec. Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 901 P.2d 1333 (1995); *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.* (First Judicial District of the State of Idaho) Case No. CV–94–02796; *Clearwater Power Co. v. Washing-* *ton Water Power Co.* (Second Judicial District of the State of Idaho) Case No. 9200224; and *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.* (First Judicial District of the State of Idaho) Case No. 81868.