**SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, Plaintiff–Appellant,**

v.

**PACIFICORP, (including Utah Power & Light, a division), Defendant–Appellee,**

State of Idaho, Defendant–intervenor–Appellee.

No. 02–36057.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Filed Feb. 9, 2004.

Charles F. Wheatley, Jr., Wheatley & Ranquist, P.A., Annapolis, Maryland, and Robert C. Huntley, Huntley Park, L.L.P., Boise, ID, for the plaintiff-appellant.

Marc T. Rasich, Stoel Rives LLP, Salt Lake City, UT, for the defendant-appellee.

Brett T. DeLange, Deputy Attorney General, State of Idaho, for defendant-intervenor-appellee State of Idaho.

Before: KLEINFELD, GOULD, and TALLMAN, Circuit Judges.

GOULD, Circuit Judge:

In this appeal, which marks the second time the parties have been before us, we again assess the scope of state action immunity from liability under federal antitrust law. The Idaho legislature responded to our prior opinion on state action immunity with legislation. We now assess whether, in light of these statutory changes, the responsibilities of the Idaho Public Utility Commission to review and approve certain conduct of PacifiCorp challenged in this case by the Snake River Valley Electric Association ("Snake River" or "SRVEA") are sufficient to confer state action immunity.

## I

This case regards SRVEA's suit against PacifiCorp, which alleged antitrust violations due to PacifiCorp's refusal (1) to sell to SRVEA its electrical system in Southeastern Idaho; (2) to sell wholesale electrical power to SRVEA; and (3) to wheel [1] wholesale electrical power obtained from another wholesale power generator to SRVEA via PacifiCorp's transmission lines.[2]

---

1. "Wheeling refers to a common industry practice where utility A delivers electricity to utility A's customers through utility B's transmission facilities." *Snake River Valley Elec. Ass'n v. PacifiCorp,* 238 F.3d 1189, 1190 n. 3 (9th Cir.2001) (internal quotation marks omitted).

2. This latter claim was based on the "essential facilities" doctrine. The essential facilities doctrine applies to a competitor's refusal to deal when the competitor has monopolistic control over an essential facility in one market and uses that monopoly power to leverage returns from different markets by refusing to share access to the essential facility. *See, e.g., City of Anaheim v. S. Cal. Edison Co.,* 955 F.2d 1373, 1380 (9th Cir.1992); *MCI Communications Corp. v. AT & T,* 708 F.2d 1081, 1132–33 (7th Cir.1983) (applying *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973)).

Snake River is an Idaho non-profit corporation, organized to deliver retail electricity to its members (mostly irrigation farmers) at lower rates than PacifiCorp charged. PacifiCorp is an electric power company that provides retail electricity to, *inter alia,* Snake River's potential customers. PacifiCorp also sells wholesale electricity nationwide through the wholesale power supply market.

In December 1995, Snake River by letter requested "wheeling" of wholesale electricity to the members of Snake River. PacifiCorp has claimed that this letter, sent to an officer with no responsibility for wheeling requests, gave insufficient information about Snake River for PacifiCorp to evaluate whether it could provide such wheeling service to Snake River. PacifiCorp responded on January 2, 1996, inviting further discussion with PacifiCorp's Senior Vice President for Transmission Services and Wholesale Sales.

Snake River did not then contact the Senior Vice President, and when PacifiCorp followed up with a telephone call, SRVEA declined to clarify its request. In a second letter sent February 16, 1996, PacifiCorp referred Snake River to two tariff schedules filed with the Federal Energy Regulatory Commission ("FERC"). Sending the tariffs was, according to testimony at trial on this issue, a standard operating practice for PacifiCorp when it received an application to wheel. Snake River never filled out an application, nor did it respond to the February 16 letter. So neither negotiations nor other clarifications of SRVEA's request occurred.

Instead, Snake River filed suit in July 1996 in the United States District Court for the District of Idaho. Snake River alleged violations of the antitrust laws from PacifiCorp refusing (1) to sell to SRVEA its electrical system in Southeastern Idaho; (2) to sell wholesale power to SRVEA; and (3) to wheel (transfer) wholesale power obtained from another generator to SRVEA via PacifiCorp's transmission lines.

PacifiCorp moved to dismiss the complaint on grounds of state action immunity. On April 25, 1997, the district court denied the motion. The State of Idaho moved to intervene on July 16, 1997, and the district court granted that motion.

On September 16, 1997, Snake River moved for a preliminary injunction to require PacifiCorp to wheel the wholesale power Snake River had obtained from a contract with Enron. Responding to the claim of irreparable injury, PacifiCorp stipulated that if Enron cancelled the contract and if PacifiCorp was found to have violated antitrust law, then PacifiCorp would step into Enron's shoes and provide power according to the terms of the SRVEA–Enron contract. In part because of this stipulation, which countered the assertion of risk of irreparable injury, the district court denied Snake River's request for a preliminary injunction on December 9, 1997.

In January 1998, Idaho moved for partial summary judgment on state action immunity grounds, contending that it actively supervised the policies underlying the Idaho Electric Supplier Stabilization Act ("ESSA"). Former Idaho Code §§ 61–332 *et seq.* (1999). PacifiCorp supported this motion. The district court granted summary judgment, holding that PacifiCorp, even if it acted anti-competitively, had state action immunity from federal antitrust law.

Snake River appealed and we reversed. *See Snake River Valley Elec. Ass'n v. PacifiCorp,* 238 F.3d 1189 (9th Cir.2001) (hereinafter *"Snake River I"*). We held that, though the ESSA had clearly articulated a policy restraining competition, the statute did not provide for active state supervision because PacifiCorp was al-

lowed to act in any manner it chose with respect to wheeling and wholesale power sales. For these reasons, we held that PacifiCorp did not have state action immunity from SRVEA's antitrust law claims. *Id.* at 1195. We reversed the summary judgment and remanded the case to the district court for trial.

Responding to our opinion's express invitation that "Idaho's situation ... could be addressed by legislative action providing for supervision," *id.*, Idaho enacted amendments to the ESSA to require active supervision by the Idaho Public Utilities Commission ("PUC") of private decisions affecting competition in Idaho's regulated market for power. *See* 2000 Idaho 1st Ex.Sess. Laws ch. 1.[3] The amendments took effect December 8, 2000.

Upon remand, PacifiCorp and Idaho moved for summary judgment on the grounds that the amended ESSA gave state action immunity and that PacifiCorp was immune from December 8, 2000 onward. PacifiCorp moved for summary judgment on the refusal to wheel claim, arguing that PacifiCorp did not refuse to deal because Snake River never made a request for wheeling, PacifiCorp also argued that summary judgment was appropriate on the refusal to sell wholesale power claim because PacifiCorp did not have a monopoly in the wholesale power market.

The district court awarded partial summary judgment to PacifiCorp. The district court held that, after December 8, 2000, the effective date of the ESSA amendments, PacifiCorp enjoyed state action immunity from SRVEA's claims. The district court further granted summary judgment to PacifiCorp on the claim that it had refused to sell power to SRVEA. Finding disputed issues of material fact

on the claim of refusal to wheel before December 8, 2000, the district court set the remaining claim of refusal to wheel for trial.

Before trial, the district court addressed evidentiary matters on motions *in limine.* Two evidentiary rulings are now relevant to this appeal. First, PacifiCorp moved to exclude evidence of its conditional stipulation to step in Enron's shoes, made at the preliminary injunction hearing, if Enron cancelled the contract and if PacifiCorp was found to have violated the antitrust laws. The district court concluded that this stipulation was evidence of PacifiCorp's refusal to wheel, but relevant only "to rebut a defense by PacifiCorp that as of December 1997 it has never refused to wheel." Because PacifiCorp had stated that it "would not be raising that defense," the district court excluded the evidence. However, the district court explicitly conditioned that its ruling was" without prejudice to SRVEA's right to proffer the evidence during trial if the door is opened."

The trial court's second evidentiary ruling relevant on this appeal allowed the admission and discussion of the regulations promulgated by the FERC to regulate applications for wheeling.

After SRVEA had rested its case-in-chief, PacifiCorp moved to amend its answer to include a "regulatory justification defense." Snake River objected based on both the timeliness and legal basis for the defense. The district court overruled the objections to the assertion of the defense.

At the close of the trial on the issue of refusal to wheel before December 8, 2000, which was held between October 8 and October 17, 2002, the district court instructed the jury. Challenged on this ap-

---

**3.** The changes in the December 8, 2000 act were set, by the terms of the statute, to expire on March 1, 2001. On February 28, 2001, the Idaho Legislature made the changes per-

manent by repealing the December 8, 2000 law and instituting the same language without the expiration provision in the prior act's stead. *See* 2001 Idaho Sess. Laws ch. 29 § 1.

peal is instruction number 15, which stated in part:

"To prove its claim, SRVEA must prove each of the following five elements by a preponderance of the evidence.... **Third,** that SRVEA requested and Pacificorp denied SRVEA access to Pacificorp's power lines.... Pacificorp responds to these claims as follows ... (b) with regard to element three, SRVEA never made a proper application to use Pacificorp's power lines and filed this lawsuit before Pacificorp could evaluate SRVEA's request...."

Although SRVEA objected to another portion of this instruction, it never objected, on the record, to the quoted portion of instruction 15 or to instruction 15 as a whole.

The jury returned a special verdict form in which the district court had posed seven questions. The jury was instructed to answer the first four questions sequentially as long as the answer was affirmative, but on these questions, which comprised the elements of the essential facilities claim, to stop and return the form if they answered "No" on any.[4] The jury marked "No" to the third question which had asked: "Did PacifiCorp deny a request by SRVEA that it be provided access to PacifiCorp's power lines?" Because the instructions had told the jury to go no further if it answered "No" to question three, that resolved the verdict against SRVEA.[5] The jury's negative response on the third question in its special verdict defeated SRVEA's refusal to wheel claim.

In light of the jury's verdict, the district court entered final judgment in favor of PacifiCorp on October 22, 2002. SRVEA timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## II

We first address whether the district court correctly ruled that PacifiCorp enjoyed "state action" immunity as of December 8, 2000, under the amended ESSA. As we explained in *Snake River I,* state action immunity derives from principles of federalism: Certain actions of the state that restrict competition are immunized from federal antitrust law. The test for state action immunity remains the same as outlined in *Snake River I:* that the challenged restraint must (1) reflect a clearly articulated state policy that permits the anti-competitive conduct and (2) that

---

4. The seven questions of the special verdict form were as follows:

(1) Were PacifiCorp's power lines that served SRVEA's potential customers essential to effective competition in the market for electrical power in that area of southeastern Idaho?[The jury marked "Yes."]

(2) Was it impractical or uneconomical for SRVEA to construct their own facilities to serve their potential customers? [The jury marked "Yes."]

(3) Did PacifiCorp deny a request by SRVEA that it be provided access to PacifiCorp's power lines? [The jury marked "No," and, as expressly instructed by the verdict form, skipped the remaining questions.]

(4) Were PacifiCorp's actions intended to, or did they have the effect of, creating or maintaining monopoly power in the market for electricity in southeastern Idaho?

(5) Did PacifiCorp actually rely on ESSA's anti-piracy provisions in refusing to deliver Enron's electricity to SRVEA's members?

(6) Did PacifiCorp reasonably and in good faith believe its actions were necessary and required to achieve a concrete and specific public policy expressed by the Idaho legislature in enacting ESSA?

(7) What, if any, are SRVEA's damages from the period May 1, 1997 to December 8, 2000?

5. Although SRVEA had objected to the use of a special verdict form, it did not object to the specific language in question three. On this appeal, no issue is raised about the form or use of the special verdict form.

the permitted anti-competitive activities are actively supervised by the state. 238 F.3d at 1192 (citing *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)).

Before analyzing whether the amended ESSA satisfies this test, we describe Idaho's current regulatory environment to aid understanding of the legal significance of the challenged activities of PacifiCorp. Because SRVEA waived the claims of its members who are not customers of PacifiCorp, *Snake River I,* 238 F.3d at 1191 n. 5, all members of SRVEA whose claims are relevant to this appeal are currently served by PacifiCorp. The old ESSA did not have a prohibition on retail wheeling; the only provision at question in *Snake River I* was former Idaho Code § 61–332B (1999). That provision prohibited an entrant electrical supplier (here, SRVEA) from servicing the territory or customer of another supplier (here, PacifiCorp) without the written consent of the current supplier. Stated another way, SRVEA could not supply power to PacifiCorp's customers without PacifiCorp's written consent. We recognized this fact in *Snake River I,* noting that "SRVEA not only asks PacifiCorp to *wheel* power, but also seeks PacifiCorp's consent to *provide* power to PacifiCorp's customers." 238 F.3d at 1191 (emphasis in original). With that understanding, we analyzed the portion of SRVEA's request that dealt with PacifiCorp's necessary consent to provide power to PacifiCorp's customers under the *Midcal* test because the withholding of consent was the only anti-competitive action covered by state statute, and thus the only action potentially eligible for state action immunity. We held, in *Snake River I,* that the statute, which provided PacifiCorp the ability to decide when, if ever, it would consent to allow SRVEA to service some of its territory or customers and provided no method for state regulation of that decision, did

not satisfy the active supervision prong of *Midcal.*

In response to our decision, the Idaho legislature amended the ESSA in two ways that are significant for our analysis of state action immunity. First, the legislature added section 61–332D, which allows an electrical supplier to refuse to wheel if the requested wheeling "results in retail wheeling and/or a sham wholesale transaction." Idaho Code § 61–332D(1) (2004). If an electrical supplier refuses to wheel, that supplier is obligated to petition the Public Utilities Commission ("PUC") for a review of whether that supplier's actions are consistent with the ESSA. *Id.* § 61–332D(2). Second, section 61–332B was amended to prohibit an electrical supplier, such as SRVEA, from serving consumers or former consumers of another electrical supplier, such as PacifiCorp. There is an exception to this prohibition if the proposed supplier, such as SRVEA, petitions the Idaho PUC and the PUC issues an order allowing the service. *See* Idaho Code § 61–334B (2004).

Under this regulatory scheme, SRVEA faces two obstacles to providing electrical service to PacifiCorp's customers: First, SRVEA needs wheeling of power by PacifiCorp to get the power to the service area. Second, even if power is wheeled, any SRVEA "pirating," within the meaning of the ESSA, of those who are now or were PacifiCorp's customers, would be prohibited absent an order from the PUC granting an exception to section 61–332B. With these regulatory provisions in mind, we turn to the analysis required by *Midcal,* and will assess whether there was a clearly articulated state policy and active supervision by the state.

*Snake River I* held that the former version of Idaho's ESSA satisfied the clearly articulated state policy prong of *Midcal.* 238 F.3d at 1193. Given our remand and further proceedings, there has been no

change on this score. Because the prior version of the ESSA satisfied this prong, and the State of Idaho strengthened its articulation of policy in the amendments to ESSA, we conclude that *a fortiori* the amended ESSA satisfies the clearly articulated state policy prong. The state has made abundantly clear that it is advancing a policy that restricts competition in this regulated area. *See, e.g.,* Idaho Code § 61-332(2) (2004). By contrast, in the normal unregulated context, our general federal antitrust law policy favors open competition between competitors for consumers. We do not normally view the active efforts of one competitor to gain customers from another as "pirating" to be discouraged. Yet here, casting its legislative eye on the regulated markets for retail power supply, the Idaho legislature has set a specific policy aimed at restricting competition for customers, maintaining stability, and protecting existing suppliers. *Id.* The state has clearly articulated its policy to "stabilize" this regulated market for retail electrical suppliers.

■ The "second prong of the *Midcal* test requires that the state 'exercise ultimate control over the challenged [private] anticompetitive conduct.'" *Snake River I,* 238 F.3d at 1193 (citing *FTC v. Ticor Title Ins. Co.,* 504 U.S. 621, 634, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992)). To satisfy this prong, the private entity must demonstrate both that the state has the power to exercise control over the private anticompetitive conduct and that the state "in fact exercise[s][its] power." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,* 981 F.2d 429, 435 (9th Cir.1992). The Supreme Court has established this test. *See FTC v. Ticor Title Ins. Co.,* 504 U.S. at 634, 112 S.Ct. 2169 ("The active supervision prong of the *Midcal* test requires that state officials *have* and *exercise* power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy.") (emphas-

es added) (citing *Patrick v. Burget,* 486 U.S. 94, 100–01, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988)).

■ The reasons for requiring such active supervision, and exercise of control, are not difficult to discern. A state may not merely establish a private preserve without competition and then leave the area unregulated in fact. As explained by the Supreme Court in *Ticor,* "[a]ctual state involvement, not deference to private price-fixing arrangements under the general auspices of state law, is the precondition for immunity from federal law. Immunity is conferred out of respect for ongoing regulation by the State, not out of respect for the economics of price restraint." 504 U.S. at 633, 112 S.Ct. 2169. Similarly, in *Snake River I,* we explained, "[t]his prong ensures that 'the state-action doctrine will shelter only the particular anticompetitive acts of private parties that, in the judgment of the State, actually further state regulatory policies.' In the absence of such review, 'there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests.'" 238 F.3d at 1193–94 (citing *Patrick v. Burget,* 486 U.S. at 101, 108 S.Ct. 1658) (internal citation omitted). We reaffirm this appropriate analysis. Applying this analysis to the case before us illustrates that, after the ESSA amendments, the State of Idaho has not left unregulated a private preserve without competition.

This conclusion is supported when we address the state's role in reviewing PacifiCorp's refusal to wheel pursuant to Idaho Code § 61–332D. The literal language of the provision makes clear that the state has the power to control whether a refusal to wheel should be approved or reversed. The remaining issue concerns the exercise of that power. On December 8, 2000, the amended ESSA gave the PUC

the authority to reverse refusals to wheel that are outside the policies of the ESSA. Because PacifiCorp did not file its section 61–332D petition until April 13, 2001, we cannot directly see the state's exercise of its statutory power before then. Here, the party refusing to wheel has the ability to invoke the exercise of state power. *See* Idaho Code § 61–332D(2) (stating that the "electrical supplier declining to furnish wheeling service . . . shall petition the commission for review of[its] action . . . ."). Although an unreasonable delay between a refusal to wheel and the exercise of state power might be a reason to reject state action immunity until a state had exercised its power, in this case, given the amendments to the ESSA, we cannot say that the five-month delay between the effective date of the amendments and the filing of the petition by PacifiCorp constitutes an unreasonable delay that would negate the conclusion that state power is being exercised.[6] Once the petition was filed, the record shows that the PUC exercised control by virtue of its proceedings, in which the parties presented briefing and argument.[7] Accordingly, we hold that PacifiCorp's refusal to wheel is protected by state action immunity.

There is also an additional ground for our decision on state action immunity. Under the prior version of the ESSA, the state did not have the power to review the decision of a public utility whether to allow another supplier to serve the utility's customers. *See Snake River I*, 238 F.3d at

1194–95. However, the amended ESSA explicitly prohibits a new supplier from "pirating" the customers of a public utility unless the PUC grants an exception, permitting the transfer of present or past customers. *See* Idaho Code §§ 61–332B, 61–334B (2004). Under the amended ESSA, a current electrical supplier has no independent power to permit a new supplier to service its existing (or former) customers. The power to control the division of consumers between current and potential electrical suppliers is controlled entirely by the PUC, a power that has not been invoked by SRVEA in this case. So far as customer transfer or allocation is concerned, this case did not present a challenge to any *private* anti-competitive conduct for the state to supervise. PacifiCorp cannot be said to have acted anti-competitively in declining to transfer customers because it does not have the power to make such a transfer: Under section 61–332B, PacifiCorp could not *allow* SRVEA to serve PacifiCorp's customers, even if PacifiCorp wanted to. Only the PUC can decide when a current utility can (or must) transfer customers to a new electrical supplier. Under this analysis, the second prong of *Midcal* is adequately satisfied in the sense that the state exercises ultimate control over transfer of customers because there is no other actor, including the public utility that is or was servicing the customers, with control over whether a new supplier can gain these customers.[8] *Cf. 324 Liquor Corp. v. Duffy*, 479 U.S. 335, 344 n.

---

**6.** This case does not require us to determine whether, under Idaho law, the PUC could exercise its power *sua sponte,* or must await a petition from the utility refusing to wheel. There was no *sua sponte* exercise of power here.

**7.** The PUC has not ruled on the underlying petition, apparently because the parties have not pressed the matter. The PUC has rejected PacifiCorp's motion for summary judgment and SRVEA's motion to dismiss, indicating

that further proceedings are necessary. These proceedings to date show sufficient exercise of state power.

**8.** Because the statute does not permit the transfer of customers by mere private action (i.e., PacifiCorp could not yield customers, without state approval from the PUC, even if it wanted to do so), another way to view this might be to say that the statute in question precludes the element of causal antitrust injury, *see Brunswick Corp. v. Pueblo Bowl–O–*

6, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987) (suggesting that a statute that fixed a price margin between wholesale and retail prices may amount to active state supervision without actual state supervision over each decision on prices); *Ticor*, 504 U.S. at 640, 112 S.Ct. 2169 (citing approvingly the *Duffy* language); *Snake River I*, 238 F.3d at 1194 (noting that the logic behind such a rule is that some state statutes regulate in such a manner that a private actor has "no discretion" to deviate from the state statute).

We hold that there is state action immunity for PacifiCorp on its refusal to wheel. Moreover, PacifiCorp's refusal to give some of its current or former customers to SRVEA was required by statute, also shielding PacifiCorp's action from antitrust liability from the effective date of the amended ESSA, December 8, 2000.[9]

## III

■ We next address whether summary judgment was appropriate for PacifiCorp on SRVEA's claim of antitrust violations predicated on PacifiCorp's decision not to sell wholesale power to SRVEA. SRVEA cites *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), for the proposition that refusal to sell wholesale power can constitute a "refusal to deal" sufficient for antitrust liability. But, as we see it, the key factual predicate for the finding of antitrust liability in *Otter Tail* was that the defendant had exploited its "strategic dominance in the transmission of power." *Otter Tail*, 410 U.S. at 377, 93 S.Ct. 1022. *Otter Tail* notes that, although the defendant refused to sell wholesale power, the two relevant municipalities had the ability to obtain such power, but that Otter Tail, with control over the transmission lines, had refused to wheel that power. *Id.* at 371, 93 S.Ct. 1022. It was the refusal to wheel, not the refusal to sell wholesale power, that was the crux of the antitrust violation, because Otter Tail had monopoly power in the former, not the latter.

*Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), rather than analyze the statute under state action immunity doctrine. That is, even if PacifiCorp acted anti-competitively by refusing to wheel, there is no injury to SRVEA because it could not have taken any of PacifiCorp's customers absent affirmative action by the PUC, because of the general prohibition of customer piracy in Idaho Code § 61–332B (2004).

9. SRVEA argues that if we find state action immunity under the amended ESSA, then the state has violated the Contracts Clause of the United States Constitution. U.S. Const. Art. I, § 10, cl. 1. To prevail on this argument, SRVEA must show that the amended ESSA substantially impairs SRVEA's contractual relationship and that significant and legitimate public purposes do not justify the impairment. *See Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir.2003) (quoting *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)). We need not address the question of substantial impairment, for we

have no doubt that the amended ESSA reflects significant and legitimate public purposes: the prohibiting of unrestrained competition for retail electric customers and the avoiding of wasteful duplication of electrical suppliers, Idaho Code § 61–332(2) (2004), both satisfy the "significant and legitimate public purpose[s]" requirement. Because the state is not a party to the contract, we defer to the legislature's judgment that the ESSA is necessary legislation to meet the stated purposes. *Campanelli*, 322 F.3d at 1098 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22–23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)). Our conclusion is reinforced by the fact that for more than thirty years electricity supply has been highly regulated in Idaho, with the goals of eliminating unrestrained competition and reducing duplication. *See Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38, 60 S.Ct. 792, 84 L.Ed. 1061 (1940) (noting that substantial impairment analysis is influenced when the contract in question is made in an industry that is, at the time of contract, highly regulated by the state).

Here, while there is evidence that PacifiCorp has monopoly power over transmission, there is no evidence that PacifiCorp has a monopoly over wholesale energy transactions, in which the market is now highly competitive. SRVEA's contract with Enron illustrates that, as the record reflects, there is a vigorous competitive market for wholesale power. This precludes a claim of monopolization under Section 2 of the Sherman Act. *See, e.g., Pac. Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 817 (9th Cir.1992) (noting that possession of monopoly power in the relevant market is a necessary element for an antitrust violation under Section 2 of the Sherman Act). SRVEA's own expert testified that there is vigorous competition in the wholesale power market, competition that did not exist at the time of *Otter Tail.*[10] We hold that, because PacifiCorp did not have a dominant position or a monopoly in the wholesale electricity generating market (as opposed to the transmission market), it can have no liability for refusal to deal by declining to sell power available from many other sellers. The district court did not err in granting summary judgment on this issue.

## IV

 We now turn to the jury verdict that found that PacifiCorp had not refused a request from SRVEA to wheel. If this verdict is sound, then it renders harmless any asserted error regarding the "regulatory justification" defense because the jury did not even address that question. *See, e.g., Kendall–Jackson Winery Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1051 (9th Cir.1998); *Janich Bros., Inc. v. Am. Distilling Co.,* 570 F.2d 848, 862 (9th Cir. 1977). SRVEA raises three claims that, in essence, attack the jury's verdict. Specifically, SRVEA contests two evidentiary rulings and one instruction to the jury.[11]

### A

 SRVEA first challenges the district court's evidentiary ruling *in limine* preventing SRVEA from introducing PacifiCorp's stipulation that, if antitrust liability was proven and if Enron terminated the contract, PacifiCorp would step into the shoes of Enron, a stipulation offered by PacifiCorp to negate the element of irreparable harm on the preliminary injunction motion. The district court noted that the

---

10. The vigorous competition in the wholesale electricity market was prompted by the requirement of open, non-discriminatory wheeling of wholesale power. *See* Energy Policy Act of 1992, Pub.L. No. 102–486, *codified at* 16 U.S.C. §§ 824j–824k (2004); *Promoting Wholesale Competition Through Open Access Non-discriminatory Transmission Services by Public Utilities and Transmitting Utilities,* Order No. 888, FERC Stats. & Regs. ¶ 31,036, 61 Fed.Reg. 21,540, 1996 WL 239663 (1996), *clarified,* 76 FERC ¶ 61,009, 1996 WL 363765 and 76 FERC ¶ 61,347, 1996 WL 799257 (1996), *on reh'g,* Order No. 888–A, FERC Stats. & Regs. ¶ 31,048, 62 Fed.Reg. 12,274, 1997 WL 111594, *clarified,* 79 FERC ¶ 61,-182, 1997 WL 257595 (1997), *on reh'g,* Order No. 888–B, 81 FERC ¶ 61,248, 62 Fed.Reg. 64,688, 1997 WL 833250 (1997), *on reh'g,* Order No. 888–C, 82 FERC ¶ 61,046, 1998 WL 18148 (1998), *aff'd in part and remanded*

*in part sub nom., Transmission Access Policy Study Group v. FERC,* 225 F.3d 667 (D.C.Cir. 2000), *aff'd sub nom., New York v. FERC,* 535 U.S. 1, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002). No evidence was presented contradicting the fact that there is open competition in the wholesale electricity market.

11. We review the district court's rulings on evidentiary issues for abuse of discretion, *e.g., McEuin v. Crown Equip. Corp.,* 328 F.3d 1028, 1032 (9th Cir.2003), and we must conclude that the error was prejudicial before we may reverse. *Id.* The formulation of jury instructions is reviewed for abuse of discretion, *e.g., Ostad v. Or. Health Scis. Univ.,* 327 F.3d 876, 883 (9th Cir.2003), unless the appellant claims that the trial court mis-stated the elements that must be proved at trial. In that case, we review the instructions de novo. *Id.*

evidence of the stipulation was irrelevant at the time of the motion *in limine* because PacifiCorp was not going to contest that, after the complaint had been filed, it had refused to wheel. SRVEA contends, however, that "[a]t the trial, PacifiCorp claimed that it never denied a request by Snake River for wheeling." But if so, then SRVEA cannot prevail on this argument because it did not proffer the evidence of the stipulation after PacifiCorp made this purported argument. The district court had explicitly conditioned its *in limine* ruling, specifying that it was "without prejudice to SRVEA's right to proffer the evidence during trial if the door is opened." SRVEA on appeal claims that the door was opened, but our review of the records leads us to conclude that SRVEA did not proffer the evidence once the door had assertedly been opened. SRVEA, by its inaction at trial, has waived this issue in the sense that it cannot show harm from the district court's *in limine* ruling. *See, e.g., Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 515 (9th Cir.1992).

### B

■■■ SRVEA next objects to the district court's admission of evidence of FERC's regulatory requirement for "a good faith wheeling request." Although SRVEA argues that it was not subject to the specific FERC requirement, the evidence is relevant to PacifiCorp's asserted routine response to *all* wheeling requests. In other words, the evidence shows the jury what PacifiCorp did when it received the incomplete request from SRVEA. This ground for admission provides ample basis for us to conclude that the district court did not abuse its discretion. SRVEA's complaints about this evidence, in our view, go to weight, not to admissibility. Moreover, it appears that SRVEA waived its objection to this evidence in that the regulations were used to question one of SRVEA's experts, and SRVEA declined to object when PacifiCorp moved to take judicial notice of the regulations of the FERC. *See Whittaker,* 953 F.2d at 515.

We see no error in the district court's ruling permitting this evidence to be considered.

### C

■■■ Finally, SRVEA objects to the jury instructions. Specifically, SRVEA objects that Instruction 15 contains errors because it did not track the ABA model, it left the jury with the impression that refusal to wheel was irrelevant, and it impermissibly gave credit to PacifiCorp's asserted defenses. SRVEA's concerns about this instruction, as argued on this appeal, were not raised before the district court. While there were three jury instruction conferences, only the third and final conference was formal and on the record. At the conference on the record, SRVEA only objected to the "last sentence on paragraph 2" of Instruction 15, a portion of the instruction that is not a basis for any assertions of error on this appeal. SRVEA's general objection that the court failed to use many of SRVEA's proposed instructions did not include an objection to the district court's rejection of the proposed alternative instruction (Plaintiff's # 41) on the essential theory doctrine. Because SRVEA did not raise the now-asserted objections to the district court with adequate specificity, SRVEA's assignments of error are waived. *See* Fed. R.Civ.P. 51(c)(1) (a party waives its objection to jury instructions unless it objects "stating distinctly the matter objected to and the grounds of the objection"); *Larson v. Neimi,* 9 F.3d 1397, 1399 (9th Cir. 1993) (holding that Rule 51 is "strictly enforced").

\* \* \*

The jury verdict is sound because the district court did not commit error on any of the three issues raised by SRVEA. We have no need to address, and do not address, PacifiCorp's argued "regulatory justification" defense because the jury's valid verdict, holding that PacifiCorp did not refuse a request from SRVEA for wheel-

ing, renders unnecessary our consideration of whether the district court erred by permitting and instructing the jury on PacifiCorp's affirmative defense of regulatory justification. We affirm the jury's verdict rejecting SRVEA's antitrust claim that PacifiCorp refused to wheel before December 8, 2000.

## V

 For the foregoing reasons, we reject SRVEA's contentions on appeal and we affirm the district court in all respects.[12] Costs are charged to the Plaintiff-Appellants.

**AFFIRMED.**

12. A remaining issue concerns attorneys' fees awarded by the district court to PacifiCorp. This award arises because SRVEA, on the eve of trial, introduced a new damage theory that increased PacifiCorp's potential liability by about $210 million. PacifiCorp objected that the new theory should be excluded because of the imminent trial, at first prevailing on this theory before the district court. SRVEA, for unrelated reasons, moved to continue the trial. The district court continued the trial and, then recognizing that continuance dispelled the reason for rejecting the new damage theory, ruled that SRVEA would be permitted to introduce its new damage theory, but on the condition that SRVEA pay the attorneys' fees that PacifiCorp incurred arguing the timeliness of the new theory before the motion for continuance. SRVEA accepted this condition, argued the new damages theory at trial, and lost. The district court then awarded

$22,625.50 in fees and costs. SRVEA appealed that award, challenging only the amount of the fees, not the propriety of awarding fees.

We review for an abuse of discretion the district court's decision awarding fees based on the timeliness issue per the agreed condition, based on the district court's inherent power to award attorneys' fees. *See, e.g., Lissner v. United States Customs Serv.*, 241 F.3d 1220, 1224 (9th Cir.2001). We have reviewed SRVEA's arguments and PacifiCorp's response, and we conclude that the district court did not abuse its discretion by granting the limited amount of fees awarded to PacifiCorp. The lateness of the plaintiff's new damages theory and the substantial potential liability for defendant it entailed justified the condition and the amount of the fee. Under the circumstances, we affirm the district court's grant of the limited attorneys' fees in the specified amount.