### SOUTH CAROLINA STATE BOARD OF DENTISTRY, Petitioner,

v.

### FEDERAL TRADE COMMISSION, Respondent.

No. 04–2006.

United States Court of Appeals, Fourth Circuit.

Argued: March 15, 2006.

Decided: May 1, 2006.

Rehearing and Rehearing En Banc Denied June 27, 2006.

**ARGUED:** Kenneth Paul Woodington, Davidson, Morrison & Lindemann, P.A., Columbia, South Carolina, for Petitioner. Michael Daniel Bergman, Federal Trade Commission, Washington, D.C., for Respondent. **ON BRIEF:** Lynne W. Rogers, General, South Carolina Department of Labor, Licensing & Regulation, Columbia, South Carolina; William H. Davidson, II, Andrew F. Lindemann, Davidson, Morrison & Lindemann, P.A., Columbia, South Carolina, for Petitioner. Jeffrey Schmidt, Director, Jeffrey Brennan, Associate Director, Bureau of Competition, William Blumenthal, General, John F. Daly, Deputy General for Litigation, Federal Trade Commission, Washington, D.C., for Respondent.

Before MOTZ and TRAXLER, Circuit Judges, and JAMES P. JONES, Chief United States District Judge for the Western District of Virginia, sitting by designation.

Dismissed by published opinion. Judge MOTZ wrote the opinion, in which Judge JONES joined. Judge TRAXLER wrote an opinion concurring in part and concurring in the judgment.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The Federal Trade Commission ("FTC") brought this action against the South Carolina State Board of Dentistry ("Board"),

alleging that the Board engaged in unfair competition by promulgating an emergency regulation that prevented oral hygienists from performing certain services in school settings unless a dentist had first examined a student and prescribed a course of treatment. The Board countered, *inter alia,* that it was immune from suit under the "state action antitrust immunity" doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). After the FTC refused to grant that protection, the Board brought this interlocutory appeal, arguing that the denial of *Parker* protection falls within the narrow class of "collateral orders" that may be appealed notwithstanding their lack of finality. We disagree, and dismiss the appeal for lack of jurisdiction.

## I.

In 2000, South Carolina amended its Dental Practice Act. The legislature, concerned that many school children in low-income areas were receiving inadequate dental care because of the scarcity of providers, relaxed the restrictions on oral hygienists performing oral prophylaxis [1] and applying sealants in schools. Prior to the 2000 amendments, hygienists could only perform those services in schools if a dentist had personally examined the patient within the preceding 45 days and had authorized such treatment. *See* S.C.Code Ann. § 40–15–80(C) (West Supp.1999). After the 2000 amendments, however, hygienists could perform those services so long as they were under the "general supervision" of a dentist. *Id.* § 40–15–80 (West Supp.2003). "General supervision," in turn, "means that a licensed dentist . . . has *authorized* the procedures to be per-

formed but does not require that a dentist be present when the procedures are performed." *Id.* § 40–15–85(2) (West Supp. 2003) (emphasis added). The amended statute did not define the term "authorized."

In January 2001, Health Promotion Services ("HPS"), a private dental services firm, began sending hygienists to schools in South Carolina to provide preventative dental care. HPS's hygienists performed oral prophylaxis and applied sealants on students that had not been pre-examined by dentists. In early July of that year, the Board received reports of "substandard patient care" by those hygienists.

On July 27, 2001, in order to prevent any future harm, the Board enacted an emergency regulation pursuant to its rule-making authority under S.C.Code Ann. § 40–15–40 (West 2001). That regulation reinserted the preexamination requirement into § 40–15–85(B) by defining the term "authorized" to mean:

> the supervising dentist must have clinically examined the patient and actually determined the need for any specific treatment. Before treatment may be performed by a dental hygienist, the supervising dentist must provide a written work order for the procedure(s) to be performed by the dental hygienist. A clinical examination must be conducted by the supervising dentist for each patient not more than fortyfive (45) days prior to the date the dental hygienist is to perform the procedure for the patient.

25–7 S.C. Reg. 79–80 (July 27, 2001). Under South Carolina law, this emergency regulation expired after 180 days, in Janu-

---

**1.** The statute defines oral prophylaxis as "the removal of any and all hard and soft deposits, accretions, toxins, and stain from any natural or restored surfaces of teeth or prosthetic

devices by scaling and polishing as a preventive measure for the control of local irritational factors." S.C.Code Ann. § 40–15–85(3) (West Supp.2003).

ary 2002. *See* S.C.Code Ann. § 1–23–130(C) (West 2005).[2]

On September 12, 2003—twenty months after the emergency regulation had expired and three months after the South Carolina legislature had enacted compromise legislation supported by both the Board and hygienists [3]—the FTC instituted this action against the Board. Under 15 U.S.C.A. § 45(b) (West 1997), such actions are adjudicated in an administrative hearing before the FTC. If the FTC issues a cease-and-desist order, the defendant may appeal directly to this court. *See id.* § 45(c).

The Board asserted two defenses during the FTC proceeding. First, it claimed the action was moot in light of the 2003 amendments to the Dental Practice Act. Second, it argued that it was entitled to "state action antitrust immunity" under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), in which the Supreme Court held that the Sherman Act should not be presumed to apply to states. On July 28, 2004, the FTC denied the Board's request for *Parker* protection but

determined that it could not resolve the mootness issue without additional discovery into whether the challenged conduct was likely to recur. It therefore referred the case to an ALJ for limited discovery on that question.[4] The Board then filed this interlocutory appeal of the FTC's rejection of the state action antitrust exemption.

## II.

■ The central question in this case is whether the Board may presently appeal the FTC's determination that it is not entitled to *Parker* protection. Generally, a party may only appeal from an order that "ends litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). *See also* 28 U.S.C.A. § 1291 (West 1993) ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States....").[5] The Supreme Court has, however, allowed interlocutory appeals in a "small class" of cases that "final-

---

**2.** Normally, emergency regulations are only valid for 90 days. Because the legislature was out of session both when the regulation was filed and when the 90–day period expired, this regulation was extended for an additional 90 days.

**3.** *See* 2003 S.C. Acts 210–15. Those amendments eliminated the preexamination requirement for patients being treated in the "public health" setting (*i.e.*, by hygienists working under the control of the Department of Health and Environmental Control State Dental Coordinator), while maintaining the preexamination requirement for hygienists working in private dental offices. *See* S.C.Code Ann. §§ 40–15–102, –110 (West Supp.2003).

**4.** On August 17, 2004, the FTC stayed that discovery pending the outcome of this appeal.

**5.** We note that the Federal Trade Commission Act does not use the same "final judgment"

language as § 1291; instead, it conditions appellate jurisdiction on "an order of the Commission to cease and desist from using any method of competition or practice." 15 U.S.C.A. § 45(c) (West 1997). Given this distinction, an argument could be made that the collateral order doctrine, which represents a "practical construction" of § 1291's final judgment rule, *see Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), does not apply. The FTC does not advance this argument, however. Moreover, the Supreme Court seems to have rejected this contention. *See Fed. Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 246, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (applying collateral order analysis to determine whether FTC's non-final decision to issue an administrative complaint was immediately appealable). Therefore, for the purposes of this case, we assume that the collateral order analysis applies to the FTC's decision.

ly determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Although the collateral order doctrine has never been expansive, the Court's recent pronouncements on the subject stress that only a very few types of interlocutory orders can qualify as immediately appealable collateral orders, lest the doctrine "overpower the substantial finality interests § 1291 is meant to further." *Will v. Hallock*, —— U.S. ——, ——, 126 S.Ct. 952, 957, 163 L.Ed.2d 836 (2006); *see also id.* at 958 ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope."); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) ("[T]he 'narrow' exception should stay that way . . . .") (citation omitted)).

■ The Court has thus reserved "collateral order" status only for orders that meet three "stringent" conditions: an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will*, 126 S.Ct. at 957. *See also Digital Equip. Corp.*, 511 U.S. at 867, 114 S.Ct. 1992. "If the order fails to satisfy any one of these requirements, it is not an immediately appealable collateral order." *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr.*, 305 F.3d 253, 258 (4th Cir.2002).

There is no dispute that the denial of *Parker* protection satisfies the first collateral order requirement; a decision that the Board is not entitled to such protection "conclusively determines" the question of whether the Board is subject to the Federal Trade Commission Act restrictions on anticompetitive conduct. The circuits are divided, however, as to whether the denial of *Parker* protection satisfies the final two requirements. Two circuits have said that it does. *See Martin v. Memorial Hosp.*, 86 F.3d 1391, 1394–97 (5th Cir.1996); *Commuter Transp. Sys. v. Hillsborough Cty. Aviation Auth.*, 801 F.2d 1286, 1289 (11th Cir.1986). Two others have suggested the same in dicta. *See We, Inc. v. City of Philadelphia*, 174 F.3d 322, 329 (3rd Cir.1999); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346 (7th Cir.1987). The Sixth Circuit, however, has held that the denial of *Parker* protection fails to meet either of the final two collateral order requirements. *See Huron Valley Hosp., Inc. v. City of Pontiac*, 792 F.2d 563, 567 (6th Cir.1986). Because we too conclude that the *Parker* analysis is neither "completely separate from the merits" nor "effectively unreviewable" after trial, we join the Sixth Circuit in holding that the denial of *Parker* protection is not an immediately appealable collateral order.

### III.

■ An order is only "collateral" to the merits of a case if it does not "involve[ ] considerations that are 'enmeshed in the factual and legal issues compromising the plaintiff's cause of action.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)). The issues raised in an interlocutory appeal need not be identical to those to be determined on the merits to fail under this requirement; only a *threat* of substantial duplication of judicial decision making is necessary.

Thus, time and again the Supreme Court has refused to find an order to be "collateral" when entertaining an immediate appeal might require it to consider issues intertwined with—though not identi-

cal to—the ultimate merits inquiry. For example, in *Cunningham v. Hamilton County*, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), the Court held a sanctions order not sufficiently "collateral" because an interlocutory appeal of that order "may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response." *Id.* at 205, 119 S.Ct. 1915. In *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), the Court held an order refusing to dismiss on *forum non conveniens* grounds not "collateral" because its immediate consideration could require a court to "scrutinize the substance of the dispute between the parties to evaluate what proof is required." *Id.* at 528, 108 S.Ct. 1945. And in *Coopers & Lybrand*, the Court found an order denying class certification not "collateral" because immediate appellate review of that decision could require analysis of questions entangled with the merits, such as the typicality and commonality of claims. 437 U.S. at 469, 98 S.Ct. 2454 & n. 12.

 The kind of interlocutory order at issue here—one denying *Parker's* protection—is similarly not separable from the merits of the underlying action. Explaining why this is so requires a brief examination of the three situations in which a party may invoke the *Parker* doctrine. First, if that party is the "state itself"—*i.e.*, the state legislature or the courts [6]—its actions "*ipso facto* are exempt from the operation of antitrust laws." *Hoover v. Ronwin*, 466 U.S. 558, 567–68, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). Second, municipalities may invoke the state action doctrine if they can "demonstrate that their anticompetitive activities were authorized by the State pursuant to state policy to displace competition." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (internal quotation marks omitted). Third, *Parker* may shield a private party (1) that acts pursuant to a "clearly articulated and affirmatively expressed" state policy to displace competition and (2) whose actions are "actively supervised by the State itself." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (internal quotation marks omitted).

This framework demonstrates why *Parker* analysis is not separable from the merits of the antitrust action. In two of the three circumstances in which *Parker* applies, a court must look to state law and determine if the state has a clearly articulated policy to displace competition. That inquiry is inherently "enmeshed" with the

---

**6.** The Supreme Court has specifically reserved judgment on whether a governor (and other executive branch officers) may invoke *ipso facto Parker* immunity. *See Hoover v. Ronwin*, 466 U.S. 558, 568 n. 17, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). It has, however, suggested that the answer is no. *See S. Motor Carriers Rate Conference v. United States*, 471 U.S. 48, 57, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985) (stating that "[t]he circumstances in which *Parker* immunity is available ... to state agencies or officials regulating the conduct of private parties" are governed by the "clear articulation" test set forth in *California Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 63

L.Ed.2d 233 (1980)). Nevertheless, several courts of appeals have extended the *ipso facto Parker* exemption to executive officers and agencies. *See, e.g., Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program*, 187 F.3d 24, 29 (1st Cir.1999) (state board of health); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 875–76 (9th Cir.1987) (state director of transportation); *Saenz v. Univ. Interscholastic League*, 487 F.2d 1026, 1027–28 (5th Cir.1973) (Extension Division of University of Texas at Austin). The Board urges us to follow suit and hold it is entitled to *ipso facto Parker* immunity. Given that we lack jurisdiction to consider this appeal, we do not reach this issue.

underlying cause of action, which requires a determination of whether a defendant has used "unfair methods of competition in or affecting commerce" or "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C.A. § 45(a)(2) (West 1997). As the Sixth Circuit put it, "[t]he analysis necessary to determine whether clearly articulated or affirmatively expressed state policy is involved and whether the state actively supervises the anticompetitive conduct .... [is] intimately intertwined with the ultimate determination that anticompetitive conduct has occurred." *Huron Valley Hosp.,* 792 F.2d at 567.[7]

To be sure, the *Parker* analysis does not always require an inquiry into whether the state acted to displace competition; the *ipso facto* exemption turns only on the identity of the defendant. But the fact that *some Parker* claims are separable cannot suffice to render them *all* separable. The law is clear on this point. Most recently, in *Van Cauwenberghe,* the Court recognized that although "in certain cases" an interlocutory order "will not require significant inquiry into the facts and legal issues presented by a case, and an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts," a court should "look to categories of cases, not to particular injustices" in fashioning a rule of appealability in collateral order cases. 486 U.S. at 529, 108 S.Ct. 1945; *see also Cunningham,* 527 U.S. at 206, 119 S.Ct. 1915 ("[W]e have consistently eschewed a case-by-case ap-

proach to deciding whether an order is sufficiently collateral."); *Carefirst,* 305 F.3d at 261 ("The determination of whether an order satisfies the requirements of the collateral order doctrine must be made by applying the requirements *to the general category to which the disputed order belongs,* not on a case-by-case basis to every order sought to be appealed." (emphasis added)).

Because the *Parker* analysis is not separable from the merits of this action, the FTC's refusal to extend *Parker* protection to the Board cannot be a collateral order. *See Carefirst,* 305 F.3d at 261 (an order must meet all three requirements to be appealable). But even if it were separable from the merits, the order at issue still would not be immediately appealable because, as explained below, it is not "effectively unreviewable" after trial.

**IV.**

 To be "effectively unreviewable," an order must protect an interest that would be "essentially *destroyed* if its vindication must be postponed until trial is completed." *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 499, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (emphasis added). The Supreme Court has specifically directed that courts not "play word games with the concept of a 'right not to be tried.' " *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 801, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989). "[I]t is not mere avoidance of a trial, but avoidance of a trial

---

7. Of course, *Huron Valley,* like *Parker,* involved a case under the Sherman Act. This case, by contrast, originated under the Federal Trade Commission Act, 15 U.S.C.A. § 45 (West 1997). But this distinction does not render *Parker* inapplicable. *See Fed. Trade Comm'n v. Ticor Title Ins. Co.,* 504 U.S. 621, 635, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992) (applying *Parker* analysis in case arising only under FTCA). Nor does this fact change our analysis of the separability of the *Parker* claim from the merits action; while "unfair competition" may not be coterminous with "anticompetitive conduct," the two concepts are still intimately intertwined. Indeed, anticompetitive conduct under the Sherman Act is a species of "unfair competition" under 15 U.S.C.A. § 45. *See Fed. Trade Comm'n v. Cement Inst.,* 333 U.S. 683, 690–94, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will,* 126 S.Ct. at 959.

■ Only a limited number of interests fall into the class of rights "effectively unreviewable" after trial. Recently, the Court identified just four categories of appeals in which the values at stake created a right not to be tried: claims to (1) absolute immunity, *Nixon v. Fitzgerald,* 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); (2) qualified immunity, *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); (3) Eleventh Amendment sovereign immunity, *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144–145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); and (4) the protections of the Double Jeopardy Clause, *Abney v. United States,* 431 U.S. 651, 660, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). *See Will,* 126 S.Ct. at 958. In each of these cases, "some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interest, and mitigating the government's advantage over the individual." *Id.* at 959. *See also id.* ("[I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later.").

Given these principles, we cannot conclude that *Parker* creates an immunity from suit. The *Parker* doctrine did not arise from any concern about special harms that would result from trial. Instead, *Parker* speaks only about the proper interpretation of the Sherman Act:

We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

*Parker,* 317 U.S. at 350–51, 63 S.Ct. 307. The Supreme Court did not say in *Parker* that states and their agencies are immune from federal restrictions placed upon a state's regulation of commerce within its borders or that Congress *could not* otherwise make states liable for antitrust violations. On the contrary, the *Parker* Court assumed that Congress, pursuant to its Commerce Clause powers, *could* prohibit a state from engaging in acts that would otherwise be prohibited under the Sherman Act, but found "nothing in the language of the Sherman Act or in its history" that suggested that Congress had taken that presumably permissible step. *Id.* Simply put, *Parker* construed a statute. It did not identify or articulate a constitutional or common law "right not to be tried." *Parker,* therefore, recognizes a "defense" qualitatively different from the immunities described in *Will,* which focus on the harms attendant to litigation itself. Even the Fifth Circuit, on whose reasoning the Board relies, agrees with this assessment. *See Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1,* 171 F.3d 231, 234 (5th Cir.1999) (en banc) ("*Parker* immunity is an inapt description, for its parentage differs from the qualified and absolute immunities of public officials.... While thus a convenient shorthand, '*Parker* immunity' is more accurately a strict standard

for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation.").

Hence we cannot conclude that the Supreme Court fashioned the *Parker* state action doctrine to protect against any harm other than a misinterpretation of federal antitrust laws. Although it is undoubtedly less convenient for a party—in this case the Board—to have to wait until after trial to press its legal arguments, no protection afforded by *Parker* will be lost in the delay. A party denied *Parker* protection, like the Board, is in much the same position as a defendant arguing that his conduct falls outside the scope of a criminal statute. *See, e.g., United States v. Gilbert,* 430 F.3d 215 (4th Cir.2005) (defendant maintained that his "innocent possession" of narcotics was beyond the reach of 18 U.S.C. § 922(g)(1)). Just as that defendant must endure a trial before appealing the merits of his unsuccessful pretrial motion, so too must the Board await a single consolidated appeal (if, indeed, it is found to have engaged in unfair competition). If we held otherwise, the important interests protected by the final judgement rule "would fade out whenever the government or an official lost an early round that could have stopped the fight." *Will,* 126 S.Ct. at 960.

## V.

The Board's contrary arguments utterly fail to grapple with the text of *Parker* and its progeny. Instead, the Board argues around the margins of the issue, advancing one contention based on terminology and another based on analogy to the values protected by other collateral orders. Neither of these arguments transforms an order denying *Parker* protection into an immediately appealable collateral order.

## A.

■ Initially, the Board maintains that *Parker* must shield parties from litigation because "[t]he Supreme Court has long referred to the state action defense created by *Parker* as '*Parker* immunity.' " Reply Brief of Appellants at 8. This argument is unpersuasive.

First, the Supreme Court did not characterize the state action antitrust doctrine as an "immunity" in the *Parker* decision itself. Indeed, although *Parker* issued in 1943, it was not until 1978—thirty-five years later—that the Court first used the term "*Parker* immunity." *See City of Lafayette v. La. Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). Nor have the Supreme Court's later precedents consistently referred to the doctrine as an "immunity." Rather, the Court has alternated between calling the *Parker* protection an "immunity" and an "exemption." *Compare City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 370, 373–74, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (using phrase "*Parker* immunity"); *Town of Hallie,* 471 U.S. at 38, 105 S.Ct. 1713 (same); *S. Motor Carriers,* 471 U.S. at 53–63, 105 S.Ct. 1721 (same); *Midcal Aluminum,* 445 U.S. at 105, 100 S.Ct. 937 (same); *City of Lafayette,* 435 U.S. at 415, 98 S.Ct. 1123 (same), *with Fisher v. City of Berkeley,* 475 U.S. 260, 280–81, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) (Brennan, J., dissenting) (using phrase "Parker exemption"); *Cmty. Commc'ns Co., Inc. v. City of Boulder,* 455 U.S. 40, 47–48, 50, 53–54, 56, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) (same); *City of Lafayette,* 435 U.S. at 398, 407 n. 33, 410, 415–16 (same); *Bates v. State Bar,* 433 U.S. 350, 359, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (same). Thus, we cannot conclude that the Court's occasional after-the-fact use of the term "*Parker* immunity" created an immunity from suit.

Furthermore, even if the Court had consistently used the "immunity" label, this would not mandate that *Parker* created a right not to be tried. As Judge Posner has observed, "[w]ords like 'immunity' ... are often used interchangeably with 'privilege,' without meaning to resolve issues of appealability.... [T]he description of a defense as an 'immunity' rather than a privilege or affirmative defense (and it could be all three things, of course) does not resolve the issue whether denial of the immunity is a collateral order." *Segni*, 816 F.2d at 346 (citation omitted). For all these reasons, the Board's terminology argument fails.

### B.

The Board's only other argument is that the state action antitrust doctrine *must* provide an immunity from suit because it serves the same ends as immunities whose denials *are* immediately appealable.

Specifically, the Board contends that, like qualified immunity, *Parker* protects "the full exercise by state actors of their discretion, undeterred by the possibility of protracted antitrust litigation." Reply Brief at 6; *see also Commuter Transp. Sys.*, 801 F.2d at 1289 ("Absent state immunity local officials will avoid decisions involving antitrust laws which would expose such officials to costly litigation and conclusory allegations."). Additionally, we note that, although the Board does not press the argument, the Fifth Circuit case upon which it relies similarly analogizes *Parker* to sovereign immunity, assertedly because "[o]ne of the primary justifications of state action immunity is the same as that of Eleventh Amendment immunity—to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the insistence of private parties." *Martin*, 86 F.3d at 1395–96 (internal quotation marks omitted). We reject both of these analogies.

As noted above, a court must look at the entire class of *Parker* orders to determine if their denial should be immediately appealable. *See Van Cauwenberghe*, 486 U.S. at 529, 108 S.Ct. 1945; *Cunningham*, 527 U.S. at 205, 119 S.Ct. 1915; *Carefirst*, 305 F.3d at 261. Hence, in order for these analogies to have purchase, the "high order" values that gave rise to qualified and sovereign immunity—the threat to officers' initiative and states' dignity—must be present in all *Parker* cases, as they are, respectively, in all qualified and sovereign immunity cases. But these values are not present in all *Parker* cases; in this way the *Parker* exemption critically differs from both qualified and sovereign immunity.

■■ For example, municipalities can invoke *Parker's* protection. *See City of Lafayette*, 435 U.S. at 413, 98 S.Ct. 1123. But because suits against municipalities threaten neither officers' initiative or states' dignity, cities may not assert either a qualified or sovereign immunity defense. *See Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (municipalities not entitled to qualified immunity); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("States are protected by the Eleventh Amendment while municipalities are not...."). Moreover, *Parker* bars all antitrust actions, regardless of the relief sought. But, because "it is unlikely that the possibility of injunctions will deter officials from the decisive exercise of their duties," *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir.1991), and because suits for injunctions against state officials do not offend a state's dignity,[8]

---

**8.** The Eleventh Amendment technically bars a person from suing a state or its agency to seek

neither qualified nor sovereign immunity operates in cases seeking purely equitable relief. *See Rowley v. McMillan*, 502 F.2d 1326, 1331 (4th Cir.1974) (qualified immunity "has no application to a suit for declaratory or injunctive relief"); *Wessel v. Glendening*, 306 F.3d 203, 207 n. 4 (4th Cir.2002) ("The protection of the Eleventh Amendment does not extend to suits seeking injunctive relief from state officials pursuant to *Ex Parte Young*."), *overruled on other grounds by Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). Additionally, *Parker* applies in suits—like this one—brought *by* the federal government. But because such suits do not offend the dignity of a state, sovereign immunity is no defense to such an action. *See United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965) (states are not immune from suits brought by the United States).

These incongruities fatally undermine the Board's claim that a denial of *Parker* protection, like a denial of qualified or sovereign immunity, should be immediately appealable. We simply cannot countenance the results that would accrue if we were to make all *Parker* denials appealable because, in *some but not all* cases, the underlying suit would threaten the harms against which qualified and sovereign immunity protect. Such a holding would allow an officer to appeal the denial of *Parker* protection in a suit for purely injunctive relief because the threat of a different suit—one for damages—might chill his initiative. Similarly, this holding would allow a city, *or even a private party*, to appeal all denials of *Parker* protection

because a different defendant—the state—would arguably suffer an indignity if sued by a private party for damages.

The Board's argument attempts to pry qualified and sovereign immunity loose from their moorings. But there is no reason to do so simply because an action asserts violations of antitrust law. We believe the more prudent course is to allow states' dignity and officers' initiative to be protected the way they always have been: through claims for sovereign and qualified immunity. Nothing stops states or public officials from asserting those defenses in addition to claiming *Parker* protection. Indeed, that is why the Board's analogy argument must fail; the only time that a party must rely on *Parker* to justify immediate appeal is when, like the Board, it can not assert a sovereign or qualified immunity defense.

## VI.

Because we lack jurisdiction, this appeal is

*DISMISSED.*

TRAXLER, Circuit Judge, concurring in part and concurring in the judgment:

I concur in my colleague's fine opinion except with respect to the holding in Part III. In my view, the question of whether the actor represents the state is separate and severable from the question of whether the action taken is unlawful. Nevertheless, because the district court order is not "effectively unreviewable" after trial, as pointed out by Judge Motz, I agree the order is not immediately appealable and

injunctive relief. *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity."). But a plaintiff may bring the suit against a state officer in his official capacity seeking prospec-

tive injunctive relief, thereby effecting the same result. *Seminole Tribe v. Florida*, 517 U.S. 44, 71 n. 14, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law.").

the appeal should be dismissed for lack of jurisdiction.