**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOLARCITY CORPORATION,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT,<br>*Defendant-Appellant*. | No. 15-17302<br><br>D.C. No.<br>2:15-cv-00374-DLR<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted November 18, 2016
San Francisco, California

Filed June 12, 2017

Before: Alex Kozinski, Ronald Lee Gilman,[*]
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Collateral-Order Doctrine/State-Action Immunity

Dismissing for lack of jurisdiction an interlocutory appeal from the district court's order denying the Salt River Project Agricultural Improvement and Power District's motion to dismiss SolarCity Corporation's antitrust lawsuit based on the state-action immunity doctrine, the panel held that the collateral-order doctrine does not allow an immediate appeal of an order denying a dismissal motion based on state-action immunity.

## COUNSEL

Daniel Volchok (argued), Thomas G. Sprankling, David Gringer, and Christopher E. Babbitt, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Molly S. Boast, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Christopher T. Casamassima, Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, California; Karl M. Tilleman and Paul K. Charlton, Steptoe and Johnson LLP, Phoenix, Arizona; for Defendant-Appellant.

Richard A. Feinstein (argued), Amy J. Mauser, Karen L. Dunn, and William A. Isaacson, Boies Schiller & Flexner LLP, Washington, D.C.; Sean P. Rodriguez, John F. Cove Jr., and Steven C. Holtzman, Boies Schiller & Flexner LLP,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Oakland, California; Roopali H. Desai and Keith Beauchamp, Coppersmith Brockelman PLC, Phoenix, Arizona; for Plaintiff-Appellee.

Chris L. Schmitter, Janine W. Kimble, Bethany D. Krueger, and John M. Baker, Greene Espel PLLP, Minneapolis, Minnesota, for Amici Curiae American Public Power Association and Large Public Power Council.

Steven Mitz (argued), James J. Fredricks, and Kristen C. Limarzi, Attorneys; Renata B. Hesse, Principal Deputy Assistant Attorney General; Antitrust Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States of America.

## OPINION

FRIEDLAND, Circuit Judge:

Solar-panel supplier SolarCity Corporation filed a federal antitrust lawsuit against the Salt River Project Agricultural Improvement and Power District (the Power District), alleging that the Power District had attempted to entrench its monopoly by setting prices that disfavored solar-power providers. The Power District moved to dismiss the complaint based on the state-action immunity doctrine. That doctrine insulates states, and in some instances their subdivisions, from federal antitrust liability when they regulate prices in a local industry or otherwise limit competition, as long as they are acting as states in doing so. *See, e.g.*, *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1109 (2015); *FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1007 (2013); *Parker v. Brown*, 317 U.S. 341, 352 (1943).

The district court denied the motion, and the Power District appealed. We must decide whether we can consider the appeal immediately under the collateral-order doctrine, or whether any appeal based on state-action immunity must await final judgment.[1] We join the Fourth and Sixth Circuits in holding that the collateral-order doctrine does not allow an immediate appeal of an order denying a dismissal motion based on state-action immunity.

# I

SolarCity sells and leases rooftop solar-energy panels. These solar panels allow its customers to reduce but not eliminate the amount of electricity they buy from other sources.

Many SolarCity customers and prospective customers live near Phoenix, Arizona, where the Power District is the only supplier of traditional electrical power. Allegedly to prevent SolarCity from installing more panels, the Power District changed its rates. Under the new pricing structure, any customer who obtains power from his own system must pay a prohibitively large penalty. As a result, SolarCity claims, solar panel retailers received ninety-six percent fewer applications for new solar-panel systems in the Power District's territory after the new rates took effect.

SolarCity filed a complaint in federal district court in Arizona. Among other claims, it alleged that the Power District had violated the Sherman and Clayton Acts because

---

[1] We address two other issues in an unpublished memorandum filed with this opinion.

it had attempted to maintain a monopoly over the supply of electrical power in its territory.

The Power District is not only a supplier of power; it is also a political subdivision of Arizona. *See* Ariz. Rev. Stat. § 48-2302; *accord, e.g.*, *City of Mesa v. Salt River Project Agric. Improv. & Power Dist.*, 416 P.2d 187, 188–89 (Ariz. 1966) (summarizing the Power District's history and status); *Salt River Project Agric. Improv. & Power Dist. v. City of Phoenix*, 631 P.2d 553, 555 (Ariz. Ct. App. 1981) (same). It moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that it has authority to set prices under Arizona law and so is immune from federal antitrust lawsuits. The district court denied the motion, citing uncertainties about the specifics of the Power District's state-law authority and business. The district court also decided not to certify an interlocutory appeal, but the Power District appealed nonetheless.

## II

Federal circuit courts have jurisdiction over appeals from "final decisions" of district courts. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting 28 U.S.C. § 1291). "A 'final decision' is typically one 'by which a district court disassociates itself from a case.'" *Id.* at 106 (alteration omitted) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). If non-final decisions were generally appealable, cases could be interrupted and trials postponed indefinitely as enterprising appellants bounced matters between the district and appellate courts. *Bank of Columbia v. Sweeny*, 26 U.S. (1. Pet.) 567, 569 (1828); *Alaska v. United States*, 64 F.3d 1352, 1357–58 & n.9 (9th Cir. 1995). Costs would be inflated by such a multiplication of proceedings, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981), and district courts

would be inhibited in their ability to manage litigation efficiently, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). Moreover, "piecemeal appeals would undermine the independence of the district judge." *Firestone*, 449 U.S. at 374.

In limited circumstances, however, appeals may be allowed before a final judgment. For example, a district court may certify an order for an immediate appeal. *See* 28 U.S.C. § 1292(b). Alternately, some statutes and rules allow an early appeal of decisions on certain specific issues.[2] Relief from a court order may also be obtained in extraordinary circumstances through a writ of mandamus. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004). Or, as the Power District argues is true here, a piece of the case may become effectively "final" under the collateral-order doctrine, even though the case as a whole has not ended. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

The collateral-order doctrine has three requirements. First, an interlocutory order can be appealed only if it is "conclusive." *See Mohawk Indus.*, 558 U.S. at 106 (quoting *Swint*, 514 U.S. at 42). Second, the order must address a

---

**[2]** *See, e.g.*, 28 U.S.C. § 1292(a) (giving circuit courts jurisdiction to hear appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"; "appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property"; and "determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed"); *id.* § 2072(c) (giving the Supreme Court power to prescribe rules defining "when a ruling of a district court is final"); Fed. R. Civ. P. 23(f) (permitting courts of appeals to hear appeals from orders granting or denying class certification).

question that is "separate from the merits" of the underlying case. *Id.* Third, the separate question must raise "some particular value of a high order" and evade effective review if not considered immediately. *Will v. Hallock*, 546 U.S. 345, 351–53 (2006); *see also Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878–79 (1994). All three requirements must be satisfied for the ruling to be immediately appealable. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007).

The Supreme Court has repeatedly emphasized that these requirements are stringent and that the collateral-order doctrine must remain a narrow exception. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 106; *Will*, 546 U.S. at 349–50; *Dig. Equip.*, 511 U.S. at 868. In addition, the Court has held that in evaluating these three requirements, we must consider "the entire category to which a claim belongs." *Dig. Equip.*, 511 U.S. at 868. "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, 'the chance that the litigation at hand might be speeded, or a particular injustice averted,' does not provide a basis for jurisdiction under § 1291." *Mohawk Indus.*, 558 U.S. at 107 (alterations omitted) (quoting *Dig. Equip.*, 511 U.S. at 868).

## III

The Power District argues that an interlocutory order denying state-action immunity is immediately appealable under the collateral-order doctrine. We begin our analysis by summarizing the state-action immunity doctrine, so as to provide context for our evaluation of the Power District's argument.

State-action immunity was first recognized in *Parker v. Brown*, 317 U.S. 341 (1943). In *Parker*, a California raisin producer alleged that a state commission that set supra-

competitive raisin prices had violated federal antitrust law. *Id.* at 346–49. The Supreme Court assumed the state's price program would violate federal antitrust law if it were privately operated. *Id.* at 350. It also assumed that Congress could have prohibited California from setting such prices. *Id.* But because the commission "derived its authority . . . from the legislative command of the state" and "nothing in the language of the Sherman Act or in its history . . . suggest[ed] that its purpose was to restrain a state . . . from activities directed by its legislature," the Court held that the commission's price-setting did not violate antitrust law. *Id.* at 350–51. As the Court explained, "In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Id.* at 351.

The Supreme Court's more recent state-action immunity cases likewise emphasize that the doctrine protects "the States' coordinate role in government," which "counsels against reading the federal antitrust laws to restrict the States' sovereign capacity to regulate their economies and provide services to their citizens." *FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1016 (2013). The doctrine also protects local governmental entities if they act "pursuant to a clearly articulated and affirmatively expressed state policy to displace competition." *Id.* at 1007.

## IV

We have not previously addressed whether an interlocutory order denying state-action immunity is immediately appealable under the collateral-order doctrine, nor has the Supreme Court. We now take on this question, mindful of the Supreme Court's admonition that the

collateral-order doctrine is a "narrow exception," *Firestone*, 449 U.S. at 374, that must be "strictly applied," *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 431 (1985).

## A

The collateral-order doctrine allows interlocutory appeals in only a "limited category of cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982) (per curiam)). That category includes interlocutory denials of certain particularly important immunities from suit. The Supreme Court has allowed immediate appeals from denials of Eleventh Amendment immunity, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993), absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982), and qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). We have also permitted such appeals from denials of foreign sovereign immunity, *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1130 (9th Cir. 2012), and tribal sovereign immunity, *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1089–91 (9th Cir. 2007).

The Power District argues that the state-action doctrine is akin to those immunities and thus that the rejection of such a defense should also be immediately appealable. But those immunities are immunities from suit, which differ from mere immunities from liability. *See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1139–40 (9th Cir. 2013); *see also United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982) (explaining the "crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges"). Unlike immunity from suit, immunity from liability can be protected by a post-judgment appeal. *Nunag-Tanedo*, 711 F.3d at 1139–40.

Denials of immunity from liability therefore do not meet the requirements for immediate appeal under the collateral-order doctrine. *Id.* Accordingly, we must consider whether the state-action immunity doctrine provides immunity from suit or immunity from liability.

The Supreme Court has cautioned against broad assertions of immunity from suit and has instructed us to "view claims of a right not to be tried with skepticism, if not a jaundiced eye." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994) (internal quotation marks omitted). Reading *Parker* with appropriate skepticism toward the Power District's claim of immunity from suit shows that the state-action doctrine is a defense to liability, not immunity from suit. The Supreme Court assumed in *Parker* that Congress could have blocked the challenged California price regulation, but the Court found no evidence in the Sherman Act that Congress actually intended to block the regulation or other similar state laws. *Parker v. Brown*, 317 U.S. 341, 350–51 (1943). *Parker* thus recognizes a limit on liability under the Sherman Act rather than a safeguard of state sovereign immunity. Consistent with that reading of *Parker*, we and the Supreme Court have described state-action immunity as an immunity from liability. *Patrick v. Burget*, 486 U.S. 94, 95 (1988) ("The question presented in this case is whether the state-action doctrine . . . protects physicians in the State of Oregon from federal antitrust liability."); *Snake River Valley Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042, 1044 (9th Cir. 2004) ("[W]e again assess the scope of state action immunity from liability under federal antitrust law.").

A denial of a motion to dismiss based on state-action immunity is thus no different from other denials of dismissal under Federal Rule of Civil Procedure 12(b)(6). When a defendant is sued under a statute that he believes was never

meant to apply to him, he may move to dismiss for failure to state a claim on which relief can be granted. His motion would then be granted if the court could not reasonably infer his liability under that statute. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Orders denying motions to dismiss on such grounds cannot ordinarily be appealed immediately. *See, e.g.*, *Alaska v. United States*, 64 F.3d 1352, 1357 (9th Cir. 1995) (explaining why an interlocutory appeal is not justified to ascertain "whether the plaintiff's claim falls within the language of a statute or common law cause of action"). We are not persuaded that a motion based on state-action immunity should be treated differently.

In this sense, state-action immunity is analogous to so-called "*Noerr–Pennington* immunity." Grounded in the First Amendment, that doctrine insulates defendants from antitrust liability for petitioning the government. *See, e.g.*, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014); *see also Nunag-Tanedo*, 711 F.3d at 1138–40. We have held that *Noerr–Pennington* immunity is not an immunity from suit but rather an immunity from liability. *Nunag-Tanedo*, 711 F.3d at 1140. It is a "principle of statutory interpretation" and "no more a protection from litigation itself than is any other ordinary defense." *Id.* Accordingly, we have held that decisions about *Noerr–Pennington* immunity are not immediately appealable. *Id.* at 1141.

Similar reasoning has led us to hold that defendants cannot immediately appeal an order rejecting their reliance on statutory preemption. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189–90 (9th Cir. 2003) (per curiam). In *Miranda B.*, the defendants had unsuccessfully moved to dismiss a 42 U.S.C. § 1983 suit, arguing that a § 1983 remedy was precluded by other statutory remedies. *See id.*

at 1190.  We determined that we had no jurisdiction over their immediate appeal, because the defendants were merely asserting a defense to liability, not an immunity from suit. *Id.* ("The 'essence' of the [defendants'] argument is thus not immunity from suit or a right not to stand trial, but a defense to suit.").  The same is true here.

In sum, because the state-action doctrine is a defense to liability and not an immunity from suit,**[3]** the collateral-order doctrine does not give us jurisdiction here.**[4]**  *Nunag-Tanedo*, 711 F.3d at 1139–40.

## B

The Power District's two primary counterarguments are unavailing.

First, the Power District argues that the collateral-order doctrine embraces interlocutory orders denying assertions of state-action immunity because that immunity has constitutional origins.  To be sure, *Parker* depended on

---

**[3]** Even if the state-action doctrine could be characterized as an immunity from suit, interlocutory denials of that defense still might not be immediately appealable under the collateral-order doctrine.  *See Will v. Hallock*, 546 U.S. 345, 353 (2006) ("[I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later.").

**[4]** Because we hold that an interlocutory appeal is not necessary to guarantee meaningful appellate review of an order denying state-action immunity, we need not decide whether the district court's order was conclusive and collateral (the two other requirements for immediate appealability under the collateral-order doctrine).  *See McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007) ("Because collateral jurisdiction requires all three elements, we lack collateral order jurisdiction if even one is not met.").

California's constitutionally protected sovereign status. *See* 317 U.S. at 351 (emphasizing the "dual system of government in which, under the Constitution, the states are sovereign"). But a defense's constitutional pedigree does not necessarily confer the right to an immediate appeal. As noted above, a claim of *Noerr–Pennington* immunity—a defense derived from the First Amendment—does not entitle one to an immediate appeal under the collateral-order doctrine. *Nunag-Tanedo*, 711 F.3d at 1141. And a criminal defendant is not entitled to an immediate appeal after his attorney is removed, even though he has a constitutional right to counsel of his choice. *See Flanagan*, 465 U.S. at 266–68. Constitutional provenance therefore does not ensure the availability of an immediate appeal. *See id.* at 268–70; *Nunag-Tanedo*, 711 F.3d at 1140.

Second, the Power District argues that an immediate appeal is necessary to avoid litigation that would distract government officials. The Supreme Court rejected a similar argument in *Will v. Hallock*, 546 U.S. 345 (2006). In *Will*, the plaintiffs lost their business after customs agents destroyed data stored in their computers. *Id.* at 348. They sued the United States under the Federal Tort Claims Act (FTCA) and in a separate complaint sued the individual agents under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The district court dismissed the case against the United States under an exception in the FTCA. *See* 546 U.S. at 348 (citing 28 U.S.C. § 2680(e)). The agents then moved to dismiss the *Bivens* case, citing the "judgment bar" in 28 U.S.C. § 2676, which essentially prohibits unsuccessful FTCA plaintiffs from suing again for the same events. The district court denied the agents' motion to dismiss the *Bivens* case, holding that its dismissal of the action against the United States did not trigger the judgment bar. *Will*, 546 U.S. at 348–49.

The Supreme Court held that the agents could not appeal immediately, rejecting the argument that immediate review was necessary to prevent distraction to the government. *See id.* at 353. The Court acknowledged "that if the *Bivens* action goes to trial the efficiency of Government will be compromised and the officials burdened and distracted, as in . . . qualified immunity case[s]." *Id.* But despite this similarity to qualified immunity cases, the Court reasoned that "[q]ualified immunity is not the law simply to save trouble for the Government and its employees." *Id.* Rather, state officials enjoy qualified immunity "because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was." *Id.* The Court held that the same could not be said of the judgment bar, which is simply designed to "avoid[] . . . litigation for its own sake." *Id.* If the avoidance of litigation alone sufficed as justification for an interlocutory appeal, then "28 U.S.C. § 1291 would fade out whenever the Government or an official lost an early round that could have stopped the fight." *Id.* at 354. The collateral-order doctrine thus did not confer jurisdiction over the agents' appeal. *See id.* at 355. Likewise, the possibility of mere distraction or inconvenience to the Power District does not give us jurisdiction here.[5]

---

[5] Of course, our holding here does not prevent states from taking advantage of other avenues for immediate review. In appropriate antitrust cases, states may assert Eleventh Amendment immunity, individual officials may assert qualified immunity, or district courts may grant early-case motions to dismiss or certify appeals under § 1292(b). As a last resort, a defendant may petition for a writ of mandamus. *Cf. Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381-82 (2004) (explaining that mandamus relief may be appropriate in a case that threatens the separation of powers, intrudes "on a delicate area of federal-state

## C

Our conclusion that an order denying state-action immunity is not appealable under the collateral-order doctrine comports with decisions of the Fourth and Sixth Circuits.

In *Huron Valley Hospital, Inc. v. City of Pontiac*, 792 F.2d 563 (6th Cir. 1986), the Sixth Circuit held that unsuccessful assertions of state-action immunity failed the second and third parts of the collateral-order test. The court concluded that questions of state-action immunity could not be separated from the merits of the underlying antitrust claim itself. *Id.* at 567. It also held that state-action immunity is not an "'entitlement' of the same magnitude as qualified immunity or absolute immunity, but rather is more akin to a defense to the original claim." *Id.* Because the Supreme Court had allowed appeals from collateral orders "in very few situations," the Sixth Circuit declined to broaden the right to an immediate appeal to encompass assertions of state-action immunity. *Id.* at 568.

The Fourth Circuit agreed in *South Carolina State Board of Dentistry v. FTC*, 455 F.3d 436 (4th Cir. 2006). It similarly held that the second and third parts of the collateral-order test were not satisfied. *Id.* at 441–47; *see also id.* at 444 ("*Parker* construed a statute. It did not

---

relations," or implicates an officer's ability to perform constitutional duties (quoting *Will v. United States*, 389 U.S. 90, 95 (1967))). Although such appeals might be possible in some circumstances, jurisdiction under the collateral-order doctrine does not turn on the existence of any subset of exceptional cases; rather, the collateral-order doctrine is evaluated with the "entire category" of orders in mind. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Dig. Equip.*, 511 U.S. at 868).

identify or articulate a constitutional or common law 'right not to be tried.'").

The Fourth Circuit also persuasively identified three specific incongruities between the state-action doctrine and immunities from suit that the Supreme Court has held fall within the collateral-order doctrine. *See* 455 F.3d at 446–47. First, municipalities may invoke state-action immunity, but they may not rely on qualified or Eleventh Amendment immunity. *Id.* at 446 (citing, among other cases, *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978), and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). Second, the state-action doctrine bars "all antitrust actions, regardless of the relief sought," but qualified and sovereign immunities do not prevent suits for certain prospective relief. *Id.* at 446–47 (citing, among other cases, *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991)). And third, an antitrust defendant can invoke state-action immunity even in a lawsuit by the United States. *Id.* at 447. *See, e.g.*, *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101 (2015) (addressing state-action immunity in a suit by the Federal Trade Commission); *FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003 (2013) (same); *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992) (same). By contrast, a state cannot rely on sovereign immunity to defend against such a lawsuit. *S.C. State Bd.*, 455 F.3d at 447 (citing *United States v. Mississippi*, 380 U.S. 128, 140–41 (1965)). Those discrepancies suggest that state-action immunity should not be treated the same as absolute, qualified, or Eleventh Amendment immunity.

We acknowledge that two circuits have reached the opposite conclusion. First, in *Commuter Transportation Systems, Inc. v. Hillsborough County Aviation Authority*,

801 F.2d 1286 (11th Cir. 1986), the Eleventh Circuit held that state-action immunity was comparable to qualified immunity because both doctrines protected officials from "costly litigation and conclusory allegations." *Id.* at 1289; *see also, e.g.*, *Danner Constr. Co. v. Hillsborough County*, 608 F.3d 809, 812 n.1 (11th Cir. 2010); *Askew v. DCH Reg'l Health Care Auth.*, 995 F.2d 1033, 1036–37 (11th Cir. 1993).

Second, in *Martin v. Memorial Hospital at Gulfport*, 86 F.3d 1391 (5th Cir. 1996), the Fifth Circuit held that "state action immunity shares the essential element of absolute, qualified and Eleventh Amendment immunities— 'an entitlement not to stand trial under certain circumstances.'" *Id.* at 1395 (quoting *Mitchell*, 472 U.S. at 525). The Fifth Circuit opined that state-action immunity protects states from the indignity of private lawsuits and spares state officials the threat and distraction of discovery and trials. *Id.* at 1395–96. It held that those interests—like the parallel protections afforded by qualified and absolute immunities—could be vindicated only if evaluated before trial.[6] *Id.*

In our view, the Fourth and Sixth Circuits' decisions are more persuasively and thoroughly reasoned. Neither *Martin*

---

[6] Two other circuits have cited *Martin* and *Commuter Transportation Systems* without endorsing their conclusions. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 703 F.3d 1147, 1150-51 (10th Cir. 2013) (noting circuit split on immediate appealability of *Parker* immunity claims but deciding the case without reaching the issue); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346 (7th Cir. 1987) (citing *Commuter Transportation Systems*); *see also We, Inc. v. City of Philadelphia*, 174 F.3d 322, 329 (3d Cir. 1999) (citing *Segni*'s discussion of *Commuter Transportation Systems*).

nor *Commuter Transportation Systems* meaningfully
grappled with the Supreme Court's persistent emphasis that
the collateral-order doctrine must remain narrow.  *See
Firestone*, 449 U.S. at 374; *Richardson-Merrell*, 472 U.S. at
431; *Flanagan*, 465 U.S. at 265–66; *Hollywood Motor Car
Co.*, 458 U.S. at 265).

Our conclusion that the Fourth and Sixth Circuits have
the better view is further bolstered by the Supreme Court's
more recent decisions.  If anything, the Supreme Court's
emphasis on the narrowness of the collateral-order doctrine
has grown stronger since *Martin* and *Commuter
Transportation Systems* were decided.  *See, e.g.*, *Mohawk
Indus.*, 558 U.S. at 106 (stressing the doctrine must "never
be allowed to swallow the general rule" (quoting *Dig.
Equip.*, 511 U.S. at 868)); *Will*, 546 U.S. at 349–50
("emphasizing its modest scope"); *Cunningham v. Hamilton
County*, 527 U.S. 198, 204 (1999) (referring to the "small
category" of appealable non-final orders (quoting *Swint v.
Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995))); *Dig.
Equip.*, 511 U.S. at 868 (labeling the doctrine's requirements
"stringent"); *P.R. Aqueduct*, 506 U.S. at 143 (describing a
"small class" of orders (quoting *Cohen*, 337 U.S. at 546));
*Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988)
(referring to the "narrow circumstances" in which the rule
applies).  Moreover, in both *Martin* and *Commuter
Transportation Systems*, an early appeal was deemed
necessary to avoid the distraction of state officials.  *See
Martin*, 86 F.3d at 1396; *Commuter Transp.*, 801 F.2d at
1289.  But, as explained above, the Supreme Court's more
recent decision in *Will* held that governmental defendants
may not rely solely on the distraction or indignity of a
lawsuit to justify immediate appealability.  *See* 546 U.S. at
353–55.

We therefore join the Fourth and Sixth Circuits in holding that defendants cannot invoke the collateral-order doctrine to immediately appeal the rejection of a state-action immunity defense.

**V**

For the foregoing reasons, the appeal is **DISMISSED** for lack of jurisdiction.